UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY THOMAS WILLS,

                Petitioner,              Case No. 1:13-cv-606

v.                                     Honorable Paul L. Maloney

JEFFREY WOODS,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Anthony Wills presently is incarcerated at the Baraga Maximum Correctional Facility. Petitioner pleaded guilty in the Ionia County Circuit Court to one count of assault with intent to commit criminal sexual conduct involving penetration, MICH. COMP. LAWS § 750.520g(1). On September 27, 2011, he was sentenced to a prison term of 95 months to 15 years. In his habeas application, Petitioner raises three grounds for relief:

I.        Inaccurate Information Contained in PSI Report[.]

II.      Ineffective Assistance of Counsel on various issues.

III.     Improper Scoring of points for OV-4 and OV-9[.]

(Pet., ECF No. 1, PageID.6, 8, 11.) The petition has been answered by the Respondent, and the Court has received the state-court record as required under Rule 5, RULES GOVERNING § 2254 CASES. Upon review of the pleadings and the record, the Court will deny the petition for failure to raise a meritorious federal claim.

## Factual and Procedural History

Petitioner's conviction arose from his attack on a female prison guard. He was initially charged with four offenses: assault with intent to commit sexual penetration, MICH. COMP. LAWS § 750.520g(1); assault of a prison employee, MICH. COMP. LAWS § 750.197c; prisoner in possession of a weapon, MICH. COMP. LAWS § 800.283(4); and assault with a dangerous weapon, MICH. COMP. LAWS § 750.82. Following negotiations, the parties reached a plea agreement.

On August 24, 2011, Petitioner appeared before the district court for a hearing to determine his competency and for entry of a guilty plea. The district court first examined the report of an independent psychological examiner. Based on that report and without objection by defense counsel, the court found Petitioner competent to stand trial. (Plea Hr'g Tr. at 4, ECF No. 15.) Petitioner then agreed to waive his preliminary examination. (*Id.* at 5.)

Thereafter acting for the circuit judge, the district judge examined Petitioner concerning the plea agreement. (*Id.*) Petitioner declared that he understood the plea agreement as described by the prosecutor. (*Id.*) In exchange for pleading guilty but mentally ill to one count of assault with intent to commit criminal sexual conduct involving penetration, Petitioner agreed that the government could file an amended information charging him as a second-offense felony offender under MICH. COMP. LAWS § 769.10. In addition, Plaintiff received a *Killebrew*[1] agreement for a sentence of 60 months, to be served consecutively to the sentence he was serving at the time of the assault. The government also agreed to dismiss the remaining counts. (*Id.* at 3.)

---

[1]*People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982) (holding that, if a plea agreement is dependent on a prosecutor's stipulation to a specific sentence, the judge must provide the defendant an opportunity to withdraw the plea if the judge will not accept the sentencing recommendation).

The court then advised Petitioner of his rights, and Petitioner agreed to waive those rights and plead guilty. (*Id.* at 6-8.) Petitioner specifically denied that he received other promises or threats that induced his guilty plea. (*Id.* at 9.) In support of his guilty plea, Petitioner admitted that he had attacked an Assistant Resident Unit Supervisor (ARUS) at the prison in which he was housed. He testified, "I grabbed her by her head and I told her to suck my dick and then we went to the floor, and she started kicking me." (*Id.* at 8.) He also admitted that his intent was to commit sexual penetration and that he used force to get the victim to comply. (*Id.* at 9.) In addition, in support of the "mentally ill" portion of the plea, Petitioner relied upon the report of the independent psychological expert. (*Id.* at 10.) Based on pages seven and eight of that report, the court concluded that Petitioner was criminally responsible, but mentally ill. (*Id.*) The court found that the guilty plea, including the mentally ill portion of the plea, was supported by a sufficient factual basis and that the plea was "knowing, accurate and voluntary." (*Id.* at 10-11.) It therefore accepted the plea. (*Id.*)

On September 27, 2011, Petitioner appeared at a sentencing hearing before Ionia County Circuit Court Judge Suzanne Kreeger. Petitioner, through counsel, made a number of objections to the Pre-Sentence Information Report (PSIR). Specifically, counsel asked that the PSIR be corrected to show the plea as "guilty but mentally ill" rather than "guilty." (Sentencing Hr'g Tr. (S. Tr.) at 9, ECF No. 3-4.) In addition, defense counsel indicated that the plea was subject to a 60-month minimum sentence agreement, which was not reflected in the PSIR. (*Id.* at 4.) The court agreed to make the changes. (*Id.* at 5.) Defense counsel also indicated that the PSIR inaccurately reflected a prior conviction for carrying a concealed weapon, which Petitioner contended had been reduced to a curfew violation. Petitioner also objected to that portion of the PSIR that showed two convictions for both assault with a dangerous weapon and kidnapping. Petitioner contended that he

was convicted of only one count of each charge. The court agreed that the PSIR would be changed, if the probation officer found support for the stated inaccuracies.

The court then entertained a statement by the victim. According to the victim, Petitioner entered the victim's office and presented her with a note, demanding, "Unzip your pants, pull her panties down to your ankles, and bend over the desk or I will slit your throat and kill you. Do not use your button or it will result in your bloodshed." (Sentencing Hr'g Tr. at 9, ECF No. 16.) After handing the victim the note, Petitioner physically attacked her, grabbing her around the throat and placing a handmade knife at her neck. He then demanded that she perform oral sex on him. *Id.* The victim stressed the severe risk she had faced and that she had only escaped because of her training in self defense and prisoner management. She expressed her view that Petitioner did not suffer from a mental illness, but was a calculating and manipulative predator who was a danger to other women. She asked the court to consider that behavior and to impose the longest sentence possible. (*Id.* at 9-11.)

After hearing from the victim, the judge concluded that Petitioner was more culpable and dangerous than was captured by the 60-month sentence agreement. (*Id.* at 12-13.) She expressed her intent to sentence Petitioner higher than the agreed-upon sentence, at a minimum term of 95 months. In light of her intent not to accept the *Killibrew* sentence, the judge offered Plaintiff an opportunity to withdraw his plea. (*Id.* at 14.) After having an opportunity to discuss the issue with his attorney, Petitioner expressed his intent to accept the 95-month sentence rather than to withdraw his plea. (*Id.* at 14-15.) The court then sentenced Petitioner to a prison term of 95 to 180 months, to run consecutively to the sentence Petitioner was then serving. She also imposed $68.00 in state costs and $130.00 in a crime victim's assessment. In light of Petitioner's mental illness,

however, the judge declined to impose repayment of the attorney fee and waived the court costs and

fines.  (*Id.* at 15.)

Petitioner filed a delayed application for leave to appeal to the Michigan Court of

Appeals, raising the following four grounds for relief:

I.  The trial court unlawfully deprived the defendant of his due process, equal
protection, and other protected rights under the United States and Michigan
Constitutions when it scored 10 points on OV-4 and 10 points on OV-9; on
plain error and/or ineffective assistance of counsel grounds this court should
review this issue.

II.  The trial court unlawfully deprived the defendant of his due process, equal
protection, and other protected rights under the United States and Michigan
Constitutions when it failed to take into account all mitigating evidence in
sentencing the defendant; on plain error and/or ineffective assistance of
counsel grounds this court should review this issue.

III.  The trial court unlawfully violated the United States and Michigan
Constitutions in sentencing the defendant to a prison term of 95 – 180 months
on the habitual offender second supplement arising out of the assault with
intent to commit criminal sexual penetration conviction; on plain error and/or
ineffective assistance of counsel grounds this Court should review this issue.

IV.  The trial court unlawfully deprived the defendant of his due process, equal
protection, and other protected rights under the United States and Michigan
Constitutions when it failed to enter a written order as to the oral
pronouncements it made at the sentencing hearing as to prior record
information set out in the presentence report and when it failed to make final
rulings on defense objections to the accuracy of the prior criminal record
information.

(Pet'r's Br. on Appeal at 2a, ECF No. 17.)  In a summary order issued on June 14, 2012, the court

of appeals denied leave to appeal for lack of merit in the grounds presented.  The court also denied

Petitioner's motion to remand to correct the record on appeal.  (Mich. Ct. App. Ord., ECF No. 17.)

Petitioner thereafter sought leave to appeal to the Michigan Supreme Court, raising

the same four claims, as well as a new, fifth claim:

V.      In [his] Prior Record Score [Petitioner] was given 15 points for PRV 5 for five or six misdemeanor convictions or prior misdemeanor juvenile adjudications. [Petitioner's] score was taken from both misdemeanor <u>and</u> juvenile adjudications. On [his] juvenile [he] would have 4 prior and [his] misdemeanor adult [he] would have 2 prior. The wording to PRV 5 is <u>or</u> not <u>and</u> meaning both.

(Pet'r's Pro Per Application for Lv. to Appeal at 4, ECF No. 18 (emphasis in original).) In an order issued on December 5, 2012, the supreme court denied leave to appeal because it was not persuaded that the questions warranted review by the court. (Mich. Sup. Ct. Ord., ECF No. 18.)

## <u>Discussion</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

I.     Ground I:  Inaccurate Pre-Sentence Information Report

In his first ground for habeas relief, Petitioner contends that the PSIR contains inaccurate information about the number and dates of his juvenile and adult convictions and the date on which he was first arrested.  As he did on appeal in the Michigan Court of Appeals, Petitioner argues that the PSIR inaccurately listed him as having six juvenile sentences of probation, four adult prison terms, three adult terms of probation, eight prior felony convictions, and an age of first arrest of 14.  Petitioner claims that he, in fact, had only three juvenile sentences of probation, two adult prison terms, two adult terms of probation, four prior felony convictions, and an age of first arrest of 13. (Pet., ECF No. 1, PageID.6; Aff. in Supp. of Mot. to Correct Record on Appeal, ECF No. 1-1, PageID.33-38.)  He moved in the Michigan Court of Appeals to correct the record, which the court denied at the time it denied leave to appeal.  (MCOA Ord., ECF No. 17.)

The legal basis for Petitioner's claim is somewhat unclear.  His habeas petition suggests that he complains solely that he is entitled to a correction of the PSIR because it may affect his eligibility for parole and it contains erroneous court and attorney fees.  However, he also suggests that his sentence violated due process because it was based on inaccurate information.

Petitioner first claims that the PSIR that was prepared in his case contained inaccurate information.  There is no federal constitutional right to a pre-sentence investigation and report.  *See Bridinger v. Berghuis*, 429 F. Supp. 2d 903, 909 (E.D. Mich. 2006); *Allen v. Stovall*, 156 F. Supp. 2d 791, 797 (E.D. Mich. 2001).  Therefore, the mere presence of hearsay or inaccurate information in the PSIR does not constitute a denial of due process so as to entitle a petitioner to habeas relief.  *Allen*, 156 F. Supp. 2d at 797.  Moreover, Petitioner's challenge to the imposition of any fine is not

cognizable on habeas review, because fines and restitution are not subject to challenge in a habeas petition. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995)

To the extent that Petitioner claims that the trial court failed to correct the inaccuracies in his pre-sentence report, in violation of Mich. Ct. R. 6.429, his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Further, to the extent that Petitioner argues that his sentence was affected by errors in the PSIR, he fails to demonstrate a due process error. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when

the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

In the instant case, Petitioner does not even argue that the trial court relied on the false information in imposing sentence. Nor does the record so reflect, as the trial court directed the probation officer to make the corrections to the offenses listed in the PSIR, if, on investigation, such corrections were warranted. (S. Tr. at 6-7.) The court gave no indication that any change to the number of prior convictions would have had any effect on the sentence imposed.

Moreover, in an order issued on April 24, 2013, the trial court denied Petitioner's motion to amend the PSIR, holding that "the probation agent was unable to confirm a valid basis for modifying [Petitioner's] criminal history so no further changes were made to the report." (Cir. Ct. Ord., ECF No. 20.) In other words, the court held that Petitioner had failed to prove that the information in the PSIR was incorrect. As previously discussed, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. Petitioner has proffered no evidence beyond the affidavit presented to the Michigan courts that the PSIR was incorrect. He therefore falls far short of demonstrating the clear and convincing evidence required to overcome the presumption of correctness afforded to the state court's decision. As a result, Petitioner fails to show that the information contained in the report was factually incorrect.

For all these reasons, Petitioner is not entitled to relief on his first habeas ground.

II.     Ineffective Assistance of Counsel

In his second ground for habeas relief, Petitioner contends that his trial attorney rendered ineffective assistance in a variety of ways: (1) counsel did not move for a bill of particulars; (2) counsel did not file a motion asking the court for an in camera review of all documents; (3) counsel failed to obtain mitigation experts; and (4) counsel failed to prevent the court from imposing a sentence of 95 to 180 months, rather than the 60 months the parties originally recommended.

When presented with the claim on direct appeal, the Michigan Court of Appeals denied relief for lack of merit in the grounds presented. Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99 (2011); *see also Johnson*, 133 S. Ct. at 1094; *Werth*, 692 F.3d at 494.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner's first two claims of ineffective assistance of counsel involve complaints about how defense counsel litigated the case before Petitioner entered his guilty plea.  It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983);  *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Petitioner, however, does not contend that his guilty plea was not knowingly or voluntarily entered. His first two claims of ineffective assistance of counsel, therefore, are barred by his decision to plead guilty.

Petitioner's third argument is that defense counsel was ineffective in failing to obtain a mitigation expert before sentencing.  Petitioner's claim fails to meet either prong of the *Strickland* standard.  First, contrary to Petitioner's representation, defense counsel utilized the report of the

independent psychological expert as mitigation evidence to support the agreed sentence of 60 months. Because of the plea agreement, no reasonable attorney would have sought another mitigation expert. Moreover, Petitioner utterly fails to allege what such a mitigation expert would or could have shown. Without such evidence, Petitioner cannot overcome the presumption that counsel rendered effective assistance. *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) ("It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'") (quoting Strickland, 466 U.S. at 689).

Further, Petitioner cannot demonstrate the requisite prejudice. The record reflects that such an expert would have had no impact on the sentence imposed. Defense counsel negotiated diligently to obtain an advantageous plea agreement on Petitioner's behalf, under which three other felonies were dismissed and the prosecutor agreed to a modest term of imprisonment. The trial court recognized the significance of the plea agreement negotiated by defense counsel, but indicated that her disagreement with the sentence recommendation was based on the statement provided by the victim at sentencing:

> I certainly understand what goes into a Killebrew agreement and I certainly respect the amount that has been negotiated in this matter. However, having had an opportunity to listen to the victim and to understand how Mr. Wills' actions have impacted her life and I guess beyond that, looking to at some point in time, he will be at a point where he could be considered for release. He clearly is a threat t[o] the safety of our society. So I will afford Mr. Wills an opportunity to withdraw his plea at this point in time but I do inten[d] to impose the maximum sentence that is recommended here.

(S. Tr. at 13-14.)  Defense counsel argued strenuously that, because the victim had agreed to the *Killebrew* agreement, her statement at sentencing should not undermine the agreement.  The court responded as follows:

> The Court certainly is not required to follow the Killebrew agreement and I understand that she was involved in that process.  But listening to her remarks here today, I can't in good conscience, comply with that.

(*Id.* at 14.)

This record demonstrates that a mitigation expert, beyond the psychological expert, would not have affected the sentence, as the trial court was concerned with the severity of the conduct disclosed by the victim.  Petitioner does not deny the conduct as described by the victim.  He also has not proffered any evidence that could have been presented by a mitigation expert that would have caused the court to alter its views on the level of danger Petitioner presented to society.  More importantly, Petitioner fails even to claim that, had counsel obtained an unspecified mitigation expert, Petitioner would not have gone to trial.  *See Hill*, 474 U.S. at 58.  Petitioner therefore fails to demonstrate either the performance or prejudice prong of his third claim of ineffective assistance of counsel.

Finally, Petitioner vaguely suggests that his attorney was ineffective in failing to obtain a 60-month sentence, rather than the 95-month minimum sentence.  As is obvious from the Court's earlier discussion, counsel acted diligently to obtain the prosecutor's agreement to a 60-month sentence.  When it became apparent that the court intended to reject the 60-month minimum, counsel vigorously argued that the victim had already agreed to the 60-month sentence and that the court should not exceed what the victim herself had accepted.  When he failed to persuade the judge to adhere to the agreement, counsel asked for an opportunity to discuss with is client the question

of withdrawing the plea, and Petitioner thereafter agreed to accept the 95 months he is not objecting to:

> MR. NORTON; If I could have a few moments to talk to my client?
>
> THE COURT: Absolutely.
>
> MR. NORTON: You want – okay, my client has indicated he will take the 95. Do you understand you have the right to withdraw your plea, that we can start all over and go to trial?
>
> THE DEFENDANT: Yes, I do.
>
> MR. NORTON: Is it still your choice to take the new recommendation that the Court is going to impose, of 95 months?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Wills, is there anything else you would like to state here this morning?
>
> THE DEFENDANT: No, Ma'am.

(S. Tr. at 14-15.)

On these facts, counsel's performance was entirely reasonable. Moreover, Petitioner cannot demonstrate the requisite prejudice because he cannot demonstrate that, absent counsel's errors, he would not have pleaded guilty and would have gone to trial. *Hill*, 474 U.S. at 58. In fact, after it became clear that his minimum sentence, Petitioner expressly declared that he did not want to withdraw his plea and did not want to proceed to trial. (S. Tr. 14-15.)

In sum, Petitioner has either waived his claims of ineffective assistance of counsel by pleading guilty or those claims are utterly without merit. In any event, Petitioner has wholly failed to overcome the double deference owed to the court of appeals' rejection of his claims.

III.     Improper Scoring of Offense Variables 4 and 9

In his third ground for habeas relief, Petitioner argues that the PSIR improperly scored Offense Variables (OVs) 4 and 9. Under MICH. COMP. LAWS § 777.34(1)(a), ten points may be scored when "[s]erious psychological injury requiring professional treatment occurred to a victim." *Id.* Plaintiff argues that nothing in the record indicated that the victim had a serious psychological injury or that it required professional treatment. Under MICH. COMP. LAWS § 777.39(1)(c), ten points may be scored when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." *Id.*

There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes."). Since Petitioner has no federal right to an individualized sentence, this ground presents an issue of state law only. Petitioner has not alleged grounds for the Court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome. *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).

Moreover, to the extent that Petitioner intends to argue that the court violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt, he also fails to demonstrate entitlement to relief. Petitioner bases his argument on the United States Supreme Court holding in

*Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Subsequently, in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), the Supreme Court held that the *Apprendi* line of cases applies equally to mandatory minimum

sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013). The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .) (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

Recently, however, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary. The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under Alleyne. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-21.

Regardless, *Lockridge*, by its own terms, is inapplicable to Petitioner's sentence. The Michigan Supreme Court only made its holding in *Lockridge* applicable to cases still "pending on

direct review." *Id.* at 523. Petitioner's case was not pending on direct review at the time the *Lockridge* court reached its decision.

Moreover, the Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review. This Court may consider only the "clearly established" holdings of the United States Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez*, 135 S. Ct. at 3; *Bailey*, 271 F.3d at 655. For the same reasons, it may not consider the holdings of the state courts. Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103). As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists can and do disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines. *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme.

Petitioner therefore fails to demonstrate that the court of appeals' decision to deny his third habeas ground was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will dismiss Petitioner's application because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:   July 27, 2016                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge